GEOFFREY C. LYON (Bar No. 132747)
Email: glyon@lyonlawyer.com
Michael Carlin (Bar No. 290264)
Email: mcarlin@lyonlawyer.com
**LYON LAW PC**
400 Oceangate Ste. 450
Long Beach, CA 90802
Tel: 562-590-6900; Fax: 562-590-6945

Attorneys for Plaintiff,
DESIONNE FRANKLIN

FILED
CLERK, U.S. DISTRICT COURT
04/26/16
CENTRAL DISTRICT OF CALIFORNIA
BY: PS  DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIONNE FRANKLIN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ACTION PROPERTY MANAGEMENT, INC.; and DOES 1 to 10,<br><br>　　　　Defendants. | Case No.: 2:15-cv-9383 – RGK(AJWx<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR FMLA RETALIATION, FMLA DISCRIMINATION, AND WRONGFUL TERMINATION**<br><br>Complaint Filed: October 27, 2015<br>Trial Date: November 22, 2016 |

* * * *

* * * *

* * * *

-1-
FIRST AMENDED COMPLAINT

COMES NOW PLAINTIFF DESIONNE FRANKLIN ("Plaintiff") and for his causes of action against Defendant ACTION PROPERTY MANAGEMENT, INC. ("Employer"); and DOES 1 to 10, alleges as follows:

## I.
## SUBJECT MATTER JURISDICTION

1. This action is brought pursuant to the California Government Code section 12945.2, and California Common law.

2. Plaintiff is not subject to any administrative exhaustion requirements for any of the causes of action alleged in this Complaint.

3. This Court has subject matter jurisdiction over the causes of action alleged in this complaint.

## II.
## PERSONAL JURISDICTION AND VENUE

4. At all relevant times Plaintiff DESIONNE FRANKLIN is and was an individual residing in the County of Los Angeles, State of California.

5. At all relevant times Defendant ACTION PROPERTY MANAGEMENT, INC. ("Employer") is and was a corporation organized under the laws of the State of California authorized to do and doing business in the State of California, County of Los Angeles.

6. The true names and capacities of the Defendants named herein as DOES 1 to 10, inclusive, whether individual, proprietorship, partnership, corporate, associate, alter ego, or otherwise, are unknown to Plaintiff who therefore sues such Defendants by fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiff will amend this complaint to show such true names and capacities when they have been determined.

7. The violations of law described in this complaint have been committed within the County of Los Angeles, State of California.

8. Pursuant to section 393 of the California Code of Civil Procedure, the County of Los Angeles is a proper and legal venue for this case.

9. The wrongful conduct of Employer set forth in the General Allegations and various Causes of Action proximately caused Plaintiff to suffer damages, injuries, loss and/or harm, including but not limited to physical, mental and emotional injuries and distress, pain and suffering, lost wages and benefits and health care expenses, and other general, special and statutory damages in amounts to be proven.

## III.

## GENERAL ALLEGATIONS

11. Plaintiff Desionne Franklin ("Plaintiff") was employed by Defendant Action Property Management, Inc.("Employer") from approximately January 30, 2012 through Plaintiff's termination on or about June 1, 2014. Plaintiff worked at Employer located at 13700 Marina Pointe Drive, Marina Del Rey, California. Plaintiff's job title was Maintenance Technician III. Plaintiff worked under managers and supervisors including Chief Engineer Tom Schuman, Chief Engineer Ricardo Marquez, Building Coordinator Guillermo Mendoza, and Manager Christine Alfieri. At all relevant times Plaintiff performed his duties competently and satisfactorily, and Employer's purported reason for terminating Plaintiff's employment was false.

12. During the period of Plaintiff's employment with Employer, Plaintiff had, and/or was perceived by Employer as having actual and/or potential disabilities. These disabilities included but are not limited to Achilles Tendinitis and Plantar Fibromatosis, and related symptoms, conditions and limitations. Plaintiff also took medications for his disabilities and related conditions. On information and belief, such diagnoses and their side effects were, or were perceived by Employer to be, actually or potentially disabling. Plaintiff's disabilities did and/or were regarded by Employer as interfering with and limiting Plaintiff's major life activities, including

ability to work. Plaintiff's disabilities required reasonable accommodations, including but not limited to periodic time off work for medical treatment and recuperation time. Employer failed and refused to provide reasonable accommodations for Plaintiff's disabilities.

13. At all relevant times Plaintiff was qualified for Plaintiff's job position with Employer, and could perform all essential functions and fundamental duties of Plaintiff's job, and of reasonably available alternative positions of Employer, either with or without reasonable accommodations, without endangering Plaintiff's or anyone else's health or safety.

14. In or about the spring/summer of 2013, Plaintiff began having difficulty walking around, particularly from pain in his heel as a result of a bad Achilles tendon. Plaintiff informed his supervisor Tom Schuman, the chief engineer at the time, about the issues in his foot.

15. On or about April 1, 2013 Plaintiff visited his doctor who completed the form "Certification of Disability and Return to Work" citing Franklin's injury/illness as Achilles Tendinitis. Plaintiff provided this form to his Employer.

16. In or about the Fall of 2013, Ricardo Marquez became the new Chief Engineer.

17. From approximately the Fall of 2013 through December 2013, Franklin suffered from foot pain on a daily basis from the constant movement and walking around during his shifts at work, ultimately receiving a prescription for his pain and injections in his tendon. Franklin visited the doctor a number of times, informing Chief Engineer Ricardo Marquez (new chief engineer) in person. Franklin used personal time to visit his doctor.

18. In or about January 2014, Plaintiff was informed by his doctor that he would have to undergo surgery. Plaintiff informed his Employer, and told his supervisors that he was waiting for a surgery date to be scheduled.

19. On or about February 20, 2014, Plaintiff was placed on light duty

for 8 weeks by his doctor. Plaintiff continued to have difficulty getting around. Manager Christine Alfieri and Chief Engineer Ricardo Marquez advised Plaintiff to request FMLA leave, even though Plaintiff's surgery was not yet scheduled. Per this suggestion and the pain he was experiencing, Plaintiff filed for FMLA.

20. On or about February 27, 2014, HR Generalist Jessica Seagull signed off on Plaintiff's request for FMLA from February 25, 2014 to April 20, 2014.

21. On or about March 5, 2014 Plaintiff's FMLA request was approved.

22. On or about March 17, 2014, Plaintiff informed HR Generalist Jessica Seagull that his surgery was scheduled for March 31, 2014.

23. On or about March 31, 2014, Plaintiff underwent surgery and was given an estimated 6 to 8 week recovery period. During his recovery, Plaintiff timely updated HR Generalist Jessica Seagull and or HR Director Kary Hill on his status, and sent Employer his work status reports.

24. On or about May 21, 2014, Plaintiff emailed HR Director Kary Hill to inform her that he would be able to return to work on June 9, 2014. The same day, HR Director Kary Hill responded saying that she would be speaking with Chief Engineer Ricardo Marquez, Building Coordinator Guillermo Mendoza, and Manager Christine Alfieri about the ability to extend Plaintiff's leave.

25. On or about May 21, 2014, HR Director Kary Hill emailed Plaintiff, Chief Engineer Ricardo Marquez, Building Coordinator Guillermo Mendoza, and Manager Christine Alfieri stating "We need to address this to determine if you can continue to hold his position. It is only for a couple of weeks more, and this would be a reasonable accommodation. My concern is that he may come back with restrictions that inhibit his ability to perform his job duties."

26. On or about June 6, 2014, Plaintiff called HR Director Kary Hill, after visiting his doctor, to inform her that he would not be able to return to work on June 9, 2014 as previously scheduled, but instead that Plaintiff's leave was extended

by his doctor to June 23, 2014. HR Director Kary Hill replied to Plaintiff's email saying that she would speak with Manager Christine Alfieri and Chief Engineer Ricardo Marquez to determine if Plaintiff's position could be held, and that she did not know if Employer would be able.

27. On or about June 11, 2014, HR Director Kary Hill told Plaintiff that Employer was going to hire somebody else because Employer needed to complete several projects as soon as possible.

28. On or about June 16, 2014, Plaintiff was terminated. HR Director Kary Hill emailed Plaintiff stating that she had discussed Plaintiff's leave with Paul Firth, Director of Human Resources, and Manager Christine Alfieri, stating "it was decided that we could no longer hold your position. If you are not able to report to work, we have no choice but to accept a resignation based on your medical condition."

29. On or about July 21, 2014, on information and belief Eddie Dunn was hired as Maintenance Technician III as Plaintiff's replacement. On information and believe, no other employee was hired in the six weeks between Plaintiff's termination and the hiring of his replacement, during which Plaintiff would have been able to return to work with or without reasonable accommodations.

30. Employer discriminated and retaliated against Plaintiff based upon Plaintiff's disabilities and Plaintiff's exercise of Plaintiff's right to medical leave. Employer's discriminatory adverse employment actions against Plaintiff included discrimination and retaliation against Plaintiff in the terms, conditions and existence of Plaintiff's employment, and finally terminating, and thereafter refusing to reinstate, Plaintiff's employment.

31. Manager Christine Alfieri, HR Director Paul Firth, and HR Director Kary Hill are managing agents of Employer because on information and belief they set major corporate policies for Employer, had the power to manage, supervise, evaluate, discipline and hire and fire other managers, enter into substantial

-6-
FIRST AMENDED COMPLAINT

agreements on behalf of Employer, as with vendors, contractors and/or customers, and participated in and/or ratified the discriminatory, retaliatory and unlawful termination of Plaintiff. Manager Christine Alfieri, HR Director Paul Firth, and HR Director Kary Hill had authority to recommend, determine, implement, ratify and/or enforce major policies of the Employer, including but not limited to discrimination, harassment and retaliation policies and legal compliance, and had responsibility to oversee the implementation, compliance and enforcement of those policies.

32. As the proximate result of Defendant's wrongful conduct, Plaintiff has and will suffer past and future lost wages and benefits in an amount to be determined by the trier of fact, but estimated to be no less than $200,000. As the proximate result of Defendant's wrongful conduct, Plaintiff has and will suffer emotional distress damages in an amount to be determined in the discretion of the trier of fact, but estimated to be no less than $300,000.

## IV.
## FIRST CAUSE OF ACTION
### FMLA Retaliation
### (By Plaintiff against Employer)

33. Plaintiff realleges and incorporates in this cause of action all numbered paragraphs above that precede the title block for the "First Cause of Action."

34. Employer discriminated and retaliated against Plaintiff based upon Plaintiff's opposition to FMLA discrimination and exercise of Plaintiff's right to medical leave. Employer's discriminatory adverse employment actions against Plaintiff included removal of responsibilities, failure and refusal to stop the harassment, discriminating against Plaintiff in the terms and conditions and existence of Plaintiff's employment, and finally terminating, and thereafter refusing to reinstate, Plaintiff's employment. Plaintiff opposed Employer's interference with his exercise of his family medical leave rights. Employer's retaliation violated FMLA.

35. Employer's wrongful conduct proximately caused Plaintiff to suffer general, special and statutory damages in an amount to be proven. Plaintiff has been required to hire attorney Geoffrey Lyon of Lyon Law PC and is entitled to recover reasonable attorney's fees. Plaintiff is entitled to injunctive relief including reinstatement, lost wages and benefits, and promotion without discrimination or retaliation.

36. Pursuant to Civil Code § 3294, Employer's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civilized society and was known, authorized, ratified and/or perpetrated by its managing agents, entitling Plaintiff to an award of punitive and exemplary damages in an amount to be proven.

## SECOND CAUSE OF ACTION
## FMLA Discrimination
## (By Plaintiff against Employer)

37. Plaintiff realleges and incorporates in this cause of action all numbered paragraphs above that precede the title block for the "First Cause of Action."

38. Employer discriminated and retaliated against Plaintiff based upon Plaintiff's opposition to FMLA discrimination and exercise of Plaintiff's right to medical leave. Employer's discriminatory adverse employment actions against Plaintiff included removal of responsibilities, failure and refusal to stop the harassment, discriminating against Plaintiff in the terms and conditions and existence of Plaintiff's employment, and finally terminating, and thereafter refusing to reinstate, Plaintiff's employment. Plaintiff opposed Employer's interference with his exercise of his family medical leave rights. Employer's retaliation violated FMLA.

39. Employer's wrongful conduct proximately caused Plaintiff to suffer general, special and statutory damages in an amount to be proven. Plaintiff has been required to hire attorney Geoffrey Lyon of Lyon Law PC and is entitled to

recover reasonable attorney's fees. Plaintiff is entitled to injunctive relief including reinstatement, lost wages and benefits, and promotion without discrimination or retaliation.

40. Pursuant to Civil Code § 3294, Employer's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civilized society and was known, authorized, ratified and/or perpetrated by its managing agents, entitling Plaintiff to an award of punitive and exemplary damages in an amount to be proven.

## THIRD CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICIES
### Common Law Tort
### By Plaintiff against Employer

41. Plaintiff realleges and incorporates in this cause of action all numbered paragraphs above that precede the title block for the "First Cause of Action."

42. Employer discharged Plaintiff in violation of important and well-established public policies, set forth in various statutes and Constitutional provisions including but not limited to FMLA 29 U.S.C. § 2601, et. seq. 29 CFR § 825.100, et seq.;CFRA Govt. Code § 12945.2;  FEHA Govt. Code § 12940(a), and ADA 42 U.S.C. § 12112. Employer discriminated and retaliated against Plaintiff's rightful exercise of medical leave and wrongfully terminated Plaintiff; failing to engage in the interactive process and accommodate Plaintiff's need for further leave as a reasonable accommodation to his disabilities.

43. Employer's wrongful conduct proximately caused Plaintiff to suffer general and special damages in an amount to be proven.

44. Employer's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civilized society and was known, authorized, ratified and/or perpetrated by its managing agents, officers or directors,

entitling Plaintiff to an award of punitive and exemplary damages in an amount to be proven.

**PRAYER FOR RELIEF**

WHEREFORE PLAINTIFF prays for relief on PLAINTIFF's causes of action as more specifically set forth in the individual causes of action:

1. For special compensatory damages, including lost wages, estimated to be no less than $200,000;
2. For general compensatory damages, including emotional distress, estimated to be no less than $300,000;
3. For statutory damages and penalties;
4. For exemplary and punitive damages;
5. For injunctive relief;
6. For prejudgment interest;
7. For reasonable attorneys' fees;
8. For costs of suit;
9. For such other and further relief as the court deems just and proper.

DATED: April 23, 2016 LYON LAW PC

*/s/ Michael Carlin*

______________________________

By: Geoffrey C. Lyon
Michael Carlin
Attorneys for Plaintiff,
DESIONNE FRANKLIN

## DEMAND FOR JURY TRIAL

PLAINTIFF demands a trial by jury of all issues in this action triable by a jury, including but not limited to issues of liability and damages.

DATED: April 23, 2016        LYON LAW PC

*/s/ Michael Carlin*

_____

By: Geoffrey C. Lyon
Michael Carlin
Attorneys for Plaintiff,
DESIONNE FRANKLIN